IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JERRY LEE NICHOLS,

    Petitioner,

v.                                                    CASE NO. 5:06-cv-00058-RS-AK

JAMES R. MCDONOUGH,[1]

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This habeas corpus matter is before the Court on Doc. 14, Respondent's Motion to Dismiss. Petitioner has filed a reply, Doc. 15, and thus, this motion is in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to dismiss be denied.

## BACKGROUND

On March 7, 2003, Petitioner pled *nolo contendre* to attempted lewd and lascivious acts on a child, a second degree felony, in the Circuit Court of Bay County, Florida. Doc. 13, Ex. A. He was placed on community control release and did not appeal. Within a week, Petitioner was arrested for violating the terms of his release. Doc. 13, Ex. B.[2] After an evidentiary hearing, Petitioner was found guilty of the violations, and on April 23, 2003, he appeared for sentencing. *Id*. At that time, Petitioner told the court that when he entered the no contest plea, he thought he

---

[1] Petitioner named the Florida Department of Corrections as the respondent in this action. However, Petitioner's custodian, James McDonough, is the appropriate respondent, and he is hereby substituted in the Department's stead.

[2] Though Exhibit B is not the actual record, it is Petitioner's appellate brief, and he has not suggested that the citations and explanations of the record contained in it are misleading or otherwise distort the actual record.

was pleading to a third-degree felony. *Id*. Petitioner, who had a college degree in engineering and had prior experience with the court system, testified "that he thought that he was pleading to the exact charge on the scoresheet." *Id*. The court found that Petitioner knew at the time of the plea that he was pleading to a second degree felony and sentenced him to 15 years imprisonment. *Id*.

Petitioner timely appealed the revocation judgment, questioning only whether the court had abused its discretion in finding that he had willfully and substantially violated the requirement that he be truthful with the probation officer. *Id*. He did not in any way contest the March conviction or the sentence imposed at that time, and indeed, asked the appellate court to reinstate him "to the sentence imposed by the trial court on March 7, 2003." *Id*.

The appellate court affirmed without opinion on February 5, 2004. Doc. 13, Ex. C. On October 12, 2004, Petitioner filed a motion for post-conviction relief.[3] Doc. 13, Ex. D. As grounds for relief, Petitioner made the following claims:

(1)   Counsel was ineffective because he "told the court that [the State] was filing an information for a second degree misdemeanor, which [Petitioner] was entering a plea, then he entered the plea agreement which indicated the offense as a second degree felony, which [Petitioner] was convicted and sentenced pursuant to";

(2)   Counsel was ineffective because he misadvised Petitioner that if he did not take the plea offer and insisted on going to trial, his bond would be revoked;

(3)   Counsel was ineffective because he misadvised Petitioner that he would not be designated as a sexual predator if he accepted the plea;

---

[3]Pursuant to the "mailbox rule," the date that the motion was deposited with the prison is the controlling filing date, not the actual date the document was filed in the court. *Houston v. Lack*, 487 U.S. 266 (1988).

(4) Petitioner's judgment and sentence "were unlawfully imposed because [he] was charged by one statute and was convicted and sentenced by another statute";

(5) There was no factual basis for the plea which resulted in Petitioner's "being convicted and sentenced for a crime that he did not commit and greater than he was charged by the information";

(6) Counsel was ineffective because he was operating under a conflict of interest, "'covering himself,'" rather than "protecting [Petitioner's] rights, which left [Petitioner] 'hanging out' with no counsel or worse, counsel working against him";

(7) Counsel was ineffective for failing to object to errors in the score sheet which "contributed to [Petitioner's] being sentenced for [a] greater offense [than] the information charged."

*Id*. In several of these grounds, Petitioner quotes from the Information, the record, and the score sheet. *See*, *e.g*., *id*. at 14-23.

There is nothing in the first post-conviction motion addressed to the revocation, only the original plea proceedings.

In denying the motion for post-conviction relief, the trial court found:

The transcript, plea form, score sheet and Information all refute Defendant's allegations and indicate that [his] plea was voluntarily entered. Further, Defendant has failed to demonstrate that counsel was ineffective and/or that Defendant was prejudiced. At Defendant's original plea and sentencing on March 7, 2003, the State did inadvertently refer to Defendant's charge as a second degree misdemeanor. However, the Court quickly corrected the State and it was clear thereafter that Defendant's charge was a second degree felony. Further, the plea form which Defendant signed clearly reflected a second degree felony charge and according to Defense Counsel, Defendant, an engineer with higher level education, had plenty of time to review the plea form. Further, the plea form reflects a sexual predator designation and Defendant stated he understood that he would receive such designation. Defendant has failed to demonstrate any prejudice suffered as a result of factual basis not being set forth on the record. The transcript and plea form reflect that Defendant's plea was voluntarily entered. Grounds one, two, three and five should be denied.

As for grounds four, six and seven, at the April 23, 2003 sentencing the

> Defendant expressed many of his concerns that were raised in this motion regarding his score sheet and the Information and those concerns were discussed and ruled on by the Court.  The State explained the Information and as the Court pointed out on the record, the original plea form and the original sentencing transcript clearly indicate that Defendant understood that he was in fact entering a plea to a second degree felony.  Counsel did bring score sheet errors to the Court's attention and they were corrected on the record.  Defendant's allegations regarding a conflict of interest are without merit, refuted by the record and do not amount to ineffective assistance of counsel.  Defendant has failed to sufficiently demonstrate that he is entitled to post-conviction relief on any of the grounds for relief he raises.

Doc. 13, Ex. E.

Petitioner appealed that ruling, which was affirmed without opinion on February 11, 2005.  Doc. 13, Ex. F.

On June 9, 2005, Petitioner filed a second motion for post-conviction relief in state court, making the following claims:

(1) Petitioner's plea was involuntary based on newly discovered documents which showed the State "had decided to charge [him] with no more than a [third degree felony]," rather than the second degree felony to which he eventually pled guilty;

(2) There was no factual basis for the plea to a second degree felony as evidenced by the newly discovery documents; and

(3) Counsel was ineffective "where he led the defendant to enter a plea for a [second degree felony] when...the state had proposed the defendant plead to a [third degree felony]."

Doc. 13, Ex. G.

Attached to the motion was a "Charging Decision and Sentence," in which the State proposed that Petitioner would "[p]lead to Attempted Lewd and Lascivious in the Presence of a Child," a third degree felony, and would serve thirty-one months in prison "with the balance on probation and the other terms are left to the court."  *Id*. at Ex. 1-2A.  According to the exhibits,

Petitioner did not request any documents from his trial attorney until April 26, 2005. *Id*. at Ex. 3-3A. He received the pertinent documents, which were in counsel's files, sometime after May 5, 2005. *Id*. at Ex. 4.

On June 27, 2005, the motion was again denied, the court concluding:

> Defendant has failed to demonstrate error on the part of counsel and/or prejudice suffered by Defendant sufficient to satisfy *Strickland V. Washington*, 466 U.S. 668, 687 (1984). The attached original and violation of probation sentencing transcripts demonstrate that Defendant's allegations are without merit and do not entitle him to the relief he seeks. The Court further points out that the "charging decision" document defendant relies on offered 31.05 months D.O.C. whereas Defendant was fortunate enough to have received a sentence of only community control and probation without any prison time. Unfortunately, Defendant failed to take advantage of this beneficial opportunity and violated his supervision shortly thereafter. Further, as pointed out in the previous order denying Defendant's first 3.850, the transcripts and plea form clearly indicate that at the time of sentencing Defendant understood the crime he was charged with and the terms of the plea agreement. Defendant's plea was voluntarily entered.

Doc. 13, Ex. H.

Petitioner appealed that decision, which was affirmed on December 12, 2005. Doc. 13, Ex. I. The instant petition was filed on March 6, 2006. In his petition, Petitioner raises seven grounds for relief, all of which focus on the original judgment of conviction:

(1) Petitioner was denied due process where the trial court failed to establish a factual basis before accepting the plea;

(2) Counsel was ineffective "by entering a plea agreement that indicated a [second degree felony], rather than a second degree misdemeanor by mistake, then failed to correct that error when brought to his attention";

(3) The Information was vague and defective;

(4) Counsel was ineffective "by failing to convey a favorable plea offer";

(5) Petitioner's plea was not knowing or voluntary;

(6) Counsel was ineffective by misadvising regarding the consequences of the

        plea;

(7)    Counsel was ineffective by misadvising Petitioner about his right to withdraw his plea and by failing to inform the court that Petitioner wanted to withdraw the plea and that there was a conflict of interest between counsel and Petitioner; and

(8)    Counsel was ineffective by misadvising Petitioner who pled guilty based on that misadvice.

Doc. 1 at 8-29.

As previously noted, Respondent has moved to dismiss the petition on the ground that it is untimely. Doc. 14. In Respondent's view, the petition is untimely because it was not filed within one year after the original judgment of conviction became final. *Id.* In response, Petitioner argues that the petition was timely filed under the discovery subsection of the statute of limitations since it was filed within one year of his receipt from counsel of the "Charging Decision and Sentence," a document about which he had no previous knowledge. Doc. 15.

## **DISCUSSION**

Section 2254 petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). This limitations period runs from the latest of the following: the date on which the state court judgment became final; the date on which an unconstitutional impediment which prevented the applicant from filing is removed; the date on which the right asserted was recognized by the United States Supreme Court and made retroactive on collateral review; or the date on which the factual predicate for the claim could have been discovered by due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Only subsections (A) and (D) are at issue in this case. The Court turns to a consideration of subsection (A) first.

In *Rainey v. Secretary for Department of Corrections*, 443 F.3d 1323 (11th Cir. 2006), the

Eleventh Circuit held: "[W]hen a petitioner who has been resentenced brings an application challenging only his original judgment of conviction, the one-year statute of limitations under the AEDPA runs from the date the original judgment of conviction became final and not the date the resentencing judgment became final." *Rainey*, 443 F.3d at 1326.

Petitioner did not appeal the original judgment of conviction, and consequently, he is not entitled to any tolling of the relevant one-year period pursuant to 28 U.S.C. § 2244(d)(2). Thus, the original judgment of conviction became final on April 7, 2003. Fla. R. App. P. 9.110(b). Under § 2244(d)(1)(A), Petitioner therefore had until April 7, 2004, to seek habeas relief in this court. As the instant petition was not filed until March 6, 2006, almost two years out of time, Petitioner clearly missed the filing deadline, and nothing he did in state court after the expiration of the statute of limitations serves to revive the time for filing here. *See Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) (tolling provisions do not restart statute of limitations once limitations period has expired); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001), *cert. denied*, 534 U.S. 1144 (2002). In other words, the time for filing the instant petition had expired before Petitioner filed his post-conviction motion in state court on October 12, 2004, and the filing of that motion could not toll a statute of limitations that had already expired. It is of no consequence that the State statute allows a prisoner two years to seek post-conviction relief, as he has only one year to seek relief in this Court.

Clearly, under *Rainey* the instant petition is untimely for several reasons. First, Petitioner's sentencing following the revocation of release constituted a "resentencing." *See Mack v. State*, 823 So.2d 746 (Fla. 2002); *Hopping v. State*, 708 So.2d 263 (Fla. 1998); *Roberts v. State*, 644 So.2d 81 (Fla. 1994). Second, the instant petition was not filed by April 7, 2004.

Finally, because the petition attacks only matters pertinent to the original judgment of conviction, the time does not run from the date on which the resentencing judgment became final, but rather from the date of the original sentencing judgment. If Petitioner had included in the instant petition a claim attacking the resentencing judgment as well, then the one-year statute of limitations would indeed have run from the date that the resentencing judgment became final, and assuming the time during which the second motion for post-conviction relief was pending is excludable, then the instant petition would have been timely filed. As explained in *Rainey*, Petitioner cannot, however, avail himself of this more generous time period. Thus, under § 2244(d)(1)(A), the petition is untimely, and the Court turns to whether the petition was timely under subsection (D).

Section 2244(d)(1)(D) provides that the one-year statute of limitations may run, not from the date of finality as just analyzed, but from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." According to Petitioner he "was not aware" that his attorney's work file contained documents relevant to asserting new grounds for post-conviction relief and he "had no way of knowing about the facts and/or the documents" until May 8, 2005. Doc. 15. As more fully explained to the state court in his second post-conviction motion:

> The defendant asserts that he had not seen these documents and was not aware of them when he filed his previous 3.850 motion. After the sentencing hearing on 04-23-03, [counsel] told the defendant that he would send a copy of all his records and documents to his appeal attorney and the defendant thought he had done so. After the appeal was finished, the appeal attorney sent the defendant a copy of the records and documents in his possession, which were used for the previous 3.850 motion.
>
> A prison law clerk suggested to the defendant on 04-25-05 that he send a request for documents to his trial attorney because he may have documents that were not

> sent to the appeal attorney that could be helpful in his case. On 04-26-05 the defendant mailed a request for documents to...trial counsel and the documents were received from [him] on 05-08-05. These documents were included in the documents [counsel] sent.

Doc. 13, Ex. G.

In *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002), the Eleventh Circuit addressed the analogous one-year statute of limitations in the context of a motion to vacate, and it is appropriate for this Court to look to *Aron* for guidance on this occasion. *See Johnson v. United States*, 340 F.3d 1219, 1224 (11th Cir. 2003) (because § 2254 petitions and § 2255 motions are analogous, the way state habeas provisions are interpreted should be used to interpret motions to vacate). Under § 2255(4), the one-year limitations period begins to run on the "date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." This limitations period, which is virtually identical to the habeas period at issue here, "begins to run when the facts *could have been* discovered through the exercise of due diligence, not when they were *actually* discovered." *Aron*, 291 F.3d at 711. Thus, the "beginning of the one-year period is triggered by a date that is not necessarily related to a petitioner's actual efforts or actual discovery of the relevant facts." *Id*. The pertinent timeliness inquiry begins with "determining whether the petitioner exercised due diligence because...if he did so, the limitation period would not begin to run before the date he actually discovered the facts supporting the claim." *Id*. "It is only if [Defendant] did not exercise due diligence that [the Court is] required to speculate about the date on which the facts could have been discovered with the exercise of due diligence." *Id*. at 711 n.1.

In determining due diligence, a petitioner is not required to use "the maximum feasible diligence, but only 'due,' or reasonable, diligence." *Id*. at 712. "Due diligence therefore does

not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." *Id*. The due diligence inquiry is "an individualized one that 'must take into account the conditions of confinement and the reality of the prison system.'" *Id*. (citation omitted).

Thus, the initial question in this case is whether instant Petitioner made "reasonable efforts" to secure a copy of his file from directly from trial counsel, since it was there that he discovered the documents at issue. By Defendant's own admission, he never followed up, either telephonically, in writing, or through a third party, his trial counsel's indication that he would send appellate counsel "a copy of all his records and documents...." While Petitioner "thought [counsel] had done so," he did not request a copy of the file for himself, to which he was clearly entitled, and he did not even request a copy from appellate counsel until some time between February 5, 2004, when the appeal on the revocation was concluded, and October 12, 2004, when he filed his first motion for post-conviction relief. Petitioner offers no explanation for why he failed to request his file directly from trial counsel until 2005. Even then, he did so only on the suggestion of a fellow prisoner.

In this Court's view, Petitioner made no efforts, much less "reasonable efforts," to secure his work file from trial counsel. Once Petitioner did make the request, his counsel immediately responded and sent him the file. This clearly shows that one letter was all it would have taken to obtain the file.

Because Petitioner did not exercise due diligence, the Court must now "speculate about the date on which the facts could have been discovered with the exercise of due diligence." *Id*. at 711 n.1. The one-year statute of limitations will then run from that date. After carefully

considering the matter, the Court has no hesitation in finding that Petitioner certainly could have retrieved his file from trial counsel and discovered the relevant documents therein long before May 8, 2005.  This conclusion is plainly supported by counsel's prompt production of the file after Petitioner's lone request.  While Petitioner hypothetically could have made the file request very soon after he pled guilty and was sentenced, such extraordinary efforts are not required, and the Court does not believe it is reasonable to set the discovery date that early since, between March 7, 2003, and February 5, 2004, when the appeal of Petitioner's revocation was concluded, he was represented by counsel.  In this Court's view, Petitioner was entitled to rely on his attorneys to represent his interests, and there was simply no reason for him to request his files from either of them until his appeal was concluded.  At the point when the appellate proceedings were over, however, Petitioner no longer had counsel and the task of going forward with any post-conviction proceedings fell to him alone, and he could have, with the exercise of due diligence, secured the original file from trial counsel within the first month following the issuance of the appellate mandate, which issued on February 24, 2004.  Doc. 1, Ex. Q.  It is therefore reasonable to suggest that as Petitioner began contemplating his options following the failed appeal, he not only could have but should have marshaled all of his files, not just those from appellate counsel, since under Florida law, he would have been required to bring all of his claims in one post-conviction proceeding or risk a finding of successiveness.  Therefore, in this Court's view, Petitioner could have discovered the pertinent documents in his file by March 24, 2004, if he had exercised due diligence, and he had one year from that date to seek habeas review in this Court.

      While facially it appears that the petition was untimely under subsection (D), Petitioner is

entitled to the tolling provisions of § 2244(d)(2), since both post-conviction motions challenged matters "with respect to the pertinent judgment" of conviction. Thus, between March 24, 2004, and October 12, 2004, when Petitioner filed his first post-conviction motion, the statute of limitations was running, and two hundred two days elapsed. The time stopped, however, on October 12, 2004, and did not resume until after the appeal was concluded on March 9, 2005, the date that the appellate mandate was issued since the date for determining the conclusion of state court post-conviction proceedings does not include the ninety-day window for filing a petition for a writ of certiorari in the United States Supreme Court. *Coates v. Byrd*, 211 F.3d 1225 (11th Cir. 2000), *cert. denied*, 531 U.S. 1166 (2001).

Between March 9, 2005, and June 9, 2005, when Petitioner filed the second motion for post-conviction relief, an additional ninety-one days elapsed for a total of two hundred ninety-three days. The time stopped during the pendency of that motion and remained tolled until the conclusion of the appeal on February 17, 2006, when the mandate on the appeal was issued. *See Artuz v. Bennett*, 531 U.S. 4 (2000). The time resumed and continued unabated until March 6, 2006, when the instant petition was filed, for a total elapsed time of three hundred ten days.

The instant petition is therefore timely under § 2244(d)(1)(D), and Respondent's motion to dismiss should be denied.

## **CONCLUSION**

Although the petition is untimely under subsection (A), as it was not filed within one year after the conviction became final, the petition is timely under subsection (D), as, with the exclusion of the tolled time, it was filed within one year of the date on which the factual predicate of Petitioner's claims could have been discovered through the exercise of due diligence.

*Page 13 of 13*

In light of the foregoing, it is respectfully **RECOMMENDED** that Respondent's motion to dismiss, Doc. 14, be **DENIED**, and this cause be **REMANDED** to the undersigned for further proceedings

**IN CHAMBERS** at Gainesville, Florida, this  **19th**  day of January, 2007.


s/ A. KORNBLUM
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**