### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

**JERRY LEE NICHOLS,**

     **Petitioner,**

**vs.**

                                                **CASE NO. 5:06cv58-RS/WCS**

**WALTER A. McNEIL,[1]**

     **Respondent.**

_____/

### REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Jerry Lee Nichols pursuant to 28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his conviction, for an attempted lewd and lascivious act upon a child, in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida, case number 02-402H.  Respondent filed an answer, doc. 22, and Petitioner filed a traverse, doc. 23, and a supplement (Petitioner's brief and motion on direct appeal), doc. 27.

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  FED. R. CIV. P. 25(d).

**Procedural History**

Petitioner was charged by information with "attempted lewd and lascivious acts on a child," in violation of FLA. STAT. § 800.04.  Doc. 22, Ex. K; doc. 22-3, p. 3 on the electronic case filing docket.[2]  The title of the charge bears the mark "2F" for a second degree felony.  *Id*.  The information alleges that Petitioner:

> [B]etween the dates of October 31, 2001 through November 30, 2001, 2002 [sic], in the County and State aforesaid, did unlawfully attempt to handle, fondle or make an assault upon a child under the age of sixteen (16) years, to-wit: [child's name omitted here], age 11 years, in a lewd, lascivious, or indecent manner, by attempting to touch the child on her vagina, in violation of Sections 800.04 and 777.04, Florida Statutes.

*Id*.

At the plea colloquy, Petitioner's attorney said that "the charge is going to be attempted lewd and lascivious on a child, a second-degree misdemeanor."  Doc. 22, Ex. M; doc. 22-3, p. 12.  *Id*.  He said that Petitioner would enter a no contest plea to that charge for a sentence of community control II with a GPS device for one year, followed by eight years of probation, designation as a sexual offender, with the ability to terminate probation in 5 years if there were no violations.  *Id*.  The court said: "You may have misspoke when you said it was a second-degree misdemeanor."  *Id.*, p. 13.  Counsel said:  "I'm sorry.  Second-degree felony."  *Id*.  Counsel then explained that:

> because this is such a serious charge, Judge, Mr. Nichols was given a copy of that plea, proposed Plea-Waiver late yesterday afternoon.  He

---

[2] The exhibits attached to document 22 are assigned a single document number 22-3 by the electronic docket.  The electronic docket assigns page numbers to each document, but these numbers do not correspond to the page numbers of specific paper exhibits.  Hereafter citations to page numbers are to the page numbers assigned on the electronic docket.  The only reference to the paper copy is to the exhibit.

took it home with him and read it and we discussed it this morning.  I
wanted you to know that, that he's had a lot of time to look at that.

*Id.*  Counsel did not say he gave Petitioner a copy of the information, and there is

nothing in the transcript of the plea colloquy to show that Petitioner had a copy of the

information prior to the plea.  *Id.*

The court and the parties discussed the fact that Petitioner had a prior conviction

dated March 4, 1996, for "lewd and lascivious" pursuant to the same statute, FLA. STAT.

§ 800.04.  *Id.*, p. 14.  Since the two convictions were within the prior ten years of each

other, counsel for Defendant agreed that Petitioner had to be designated a "sexual

predator" instead of a "sexual offender" as first represented.  *Id.*, pp. 14-15.

Petitioner was sworn as a witness.  *Id.*, p. 15.  The court advised Petitioner that

he was charged with "attempted lewd and lascivious act on a child.  That's a second-

degree felony in Florida, punishable by 15 years in prison."  *Id.*, p. 16.  The court asked

if it was Petitioner's understanding that he would enter a no contest plea to that charge

"provided I sentence you in the fashion that he just announced," and Petitioner said:

"Yes, sir."  *Id.*

Petitioner said he understood that by pleading guilty he lost his right to a jury trial

and he said that no one had forced him to accept the plea.  *Id.*  He said he had had an

adequate time to talk with his lawyer and did not need to ask his lawyer any questions.

*Id.*, pp. 16-17.  The court said:  "Do you understand that if you violate the terms of your

supervision you're looking at 15 years in prison?" and Petitioner said: "Yes, sir."  *Id.*, p.

17.  Petitioner said he understood all of the conditions that would be imposed upon him

as a sexual predator.  *Id.*  Petitioner said that he read the Plea, Waiver and Consent

Form and he signed it. *Id*. He said that he understood it. *Id*. He said he did not have any questions about it. *Id*., p. 18. Defense counsel was then asked: "Counsel, [do] you stipulate the state can prove your client is guilty of these charges for purposes of the plea," and counsel said yes. *Id*.

The court adjudicated Petitioner guilty and imposed the agreed upon sentence, a sentence that avoided prison time, and designated Petitioner a sexual predator.[3] *Id*. The court said that this sentence was a "departure from the guidelines and this is as a result of an uncoerced plea bargain. At the request of the victim's mother the child does not want to testify." *Id*., p. 19. The court noted that pursuant to the plea agreement, Petitioner could terminate supervision early in five years if no violations had occurred. *Id*., p. 20. The court said:

> If you come back here on a violation and it's determined that you willfully violated your supervision after a court proceeding I will sentence you to prison for as long as I can.

*Id*., pp. 20-21. Petitioner said: "Yes, sir." *Id*., p. 21. The court said: "There will be nothing less than the maximum sentence for you," and Petitioner said "I understand." *Id*.

A violation of community control charge was filed seven days later, on March 14, 2003. Doc. 13, Ex. B; doc. 13-3, p. 11 (brief on appeal). On April 23, 2003, community control was revoked and Petitioner was sentenced to 15 years in prison. Doc. 22, Ex. N (transcript of sentencing after revocation of community control); doc. 22-3, p. 33.

---

[3] Judgment was entered on the date of the plea, March 7, 2003. Doc. 13, Ex. A; doc. 13-3, pp. 2-3.

Petitioner filed a direct appeal from the revocation of community control.  Doc. 13, Ex. B; doc. 13-3, p. 5 (initial brief).  The decision below was affirmed *per curiam*. *Id.*, Ex. C; doc. 13-3, p. 32.

On about October 18, 2004, Petitioner filed his first Rule 3.850 motion.  Doc. 13, Ex. D; doc. 13-4, p. 2.  The motion was denied with opinion but without an evidentiary hearing.  *Id.*, Ex. E; doc. 13-5, p. 3.  Petitioner appealed and the decision was affirmed on appeal without opinion.  *Id.*, Ex. F; doc. 13-5, p. 24.

Petitioner filed a second Rule 3.850 motion on about June 10, 2005.  Doc. 13, Ex. G;[4] doc. 13-6, p. 1.  This motion was denied with opinion but without a hearing.  *Id.*, Ex. H; doc. 13-6, p. 28.  Petitioner appealed and the decision was affirmed on appeal without opinion.  *Id.*, Ex. I; doc. 13-6, p. 30.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard).

If a claim was not fairly presented but is procedurally barred from further state court review, Petitioner must demonstrate cause for the default and actual prejudice, *or*

---

[4] The page with the exhibit letter G was not scanned into the docket, but Respondent's memorandum refers to this as exhibit G.  Doc. 22, p. 3.

demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For claims that were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).  Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted); Carey v. Musladin, 549 U.S. __, 127 S.Ct. 649, 653, 166

L.Ed.2d 482 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843,

1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct.

at 1850.  See also, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168

L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams,

other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation

of our cases – indeed, it does not even require awareness of our cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them."   Early

v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in

original).  Further, "whether a state court's decision was unreasonable must be

assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S.

649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001).  See also Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler).  There are no rigid requirements or absolute duty to investigate a particular defense.  Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

Id.

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007), *quoting*, Hill.

The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial."  Hill, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, the question of whether a defendant would have insisted upon going to trial had attorney error not occurred with respect to the guilty plea will turn in large part upon whether the defendant might reasonably have achieved a more favorable outcome had he gone to trial.  United States v. Rosario, 902 F.2d 55, 58 (D.C. Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.  Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.  *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had

done so he either would have been acquitted or, if convicted, would
nevertheless have been given a shorter sentence than he actually
received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis,
"there is no reason . . . to approach the inquiry in the same order or even to address
both components of the inquiry if the defendant makes an insufficient showing on one."
466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim
on the ground of lack of sufficient prejudice, which we expect will often be so, that
course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the
"contrary to" language of § 2254(d)(1) even if this court might have applied Strickland
differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122
S.Ct. at 1852.  To determine whether the state court's adjudication was an
"unreasonable application" of Strickland, Petitioner "must do more than show that he
would have satisfied *Strickland's* test if his claim were being analyzed in the first
instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts
of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122
S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable*
application of federal law is different from an *incorrect* application of federal law."
Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Ground One contends that Petitioner was denied due process in the plea
colloquy because the trial court accepted the plea without establishing a factual basis

for the plea on the record.  Ground One depends upon a thorough understanding of the bases of the other claims, which are rather complicated.  Consequently, Ground One will be considered last in this report and recommendation.

**Ground Two**

Petitioner contends that his trial counsel was ineffective with respect to advice concerning the plea.  Petitioner asserts that on February 19, 2003, the assistant state attorney presented to his attorney a "charging decision" indicating an intent to charge a third degree felony of an attempted lewd and lascivious act in the presence of a child under the age of 16.  Doc. 1, p. 12.  Petitioner asserts that on March 6, 2003, his attorney told him that he would be entering a plea to "a lesser offense" and he would be placed on community control and probation.  *Id.*  Petitioner asserts that on March 7, 2003, when he appeared to enter the plea, his attorney told the court that the plea was for a second degree misdemeanor, but the plea agreement by mistake (according to Petitioner) indicated that the charge was a second degree felony.  *Id.*  Petitioner asserts:  "When the court brought to his attention that the plea agreement indicated a (2F) [second degree felony], he [Petitioner] looked at the plea agreement and simply agreed," and Petitioner then stood silent while he was sentenced to community control and probation even though he knew that the state only intended to charge him with a third degree felony.  *Id.*  Petitioner argues that an assault is a second degree misdemeanor, and he notes that the information in part charged an "assault."  *Id.*, p. 13.  The argument is that a simple "assault" would have been a second degree misdemeanor.  Petitioner contends his attorney was ineffective for allowing him to plead

to a second degree felony when he was supposed to plead to a second degree misdemeanor.  *Id.*, p. 14.

In summary, a necessary premise for Ground Two, convoluted as it is,  is that the State intended to charge Petitioner with a second degree misdemeanor.  It is Petitioner's contention that his attorney was at fault for allowing him to plead no contest to a second degree felony.

Respondent argues that this claim, raised in ground one of the first Rule 3.850 motion, did not mention the Strickland case and therefore did not fairly present the ineffectiveness claim to the state courts.  Ground one in the first Rule 3.850 motion is entitled ineffective assistance of counsel.  Doc. 13, Ex. D; doc. 13-4, p. 11.  Petitioner asserted there that a "competent and effective trial council [sic] would not have entered a plea agreement for a second degree Felony, when the information clearly alleges a misdemeanor assault, [to] which he could have entered a plea."  *Id.*  He argued his rights under "U S Constitution [Amendment] 6" were violated.  *Id.*, p. 12.  Petitioner plainly identified his federal claim.  He did not need to cite Strickland, and the trial court understood the federal claim without citing Strickland.  This fairly presented the federal claim to the state court.  Picard, 404 U.S. at 277, 92 S.Ct. at 513 (petitioner need not cit "book and verse on the federal constitution," but present the substance of the federal claim in state court) (citations omitted).  The exhaustion defense is without merit.

The trial court denied this claim, reasoning:

The transcript [of the plea colloquy], plea form, score sheet and Information all refute Defendant's allegations and indicate that Defendant's plea was voluntarily entered.  Further, Defendant has failed to demonstrate that counsel was ineffective and/or that Defendant was prejudiced.  At Defendant's original plea and sentencing on March 7,

> 2003, the State did inadvertently refer to Defendant's charge as a second degree misdemeanor.  (T 3).  However, the Court quickly corrected the State and it was very clear thereafter that Defendant's charge was [a] second degree felony.  Further, the plea form which Defendant signed clearly reflected a second degree felony charge and according to Defense Counsel, Defendant, an engineer with a higher level education, had plenty of time to review the plea form. . . .

Doc. 13, Ex. E; doc. 13-5, p. 2.

In denying the second Rule 3.850 motion, the court said that Petitioner had failed

to demonstrate attorney error or prejudice sufficient to satisfy <u>Strickland</u>.  Doc. 13, Ex.

H; doc. 13-6, p. 28.  The court said in part:

> The attached original and violation of probation sentencing transcripts demonstrate that Defendant's allegations are without merit and do not entitle him to the relief he seeks.  The Court further points out that the "charging decision" document defendant relied on offered 31.05 months D.O.C.  whereas Defendant was fortunate enough to have received a sentence of only community control and probation without any prison time. . . .  Further, as pointed out in the previous order denying Defendant's first 3.850, the transcripts and plea form clearly indicate that at the time of sentencing Defendant understood the crime he was charged with and the terms of the plea agreement.  Defendant's plea was voluntarily entered.

*Id.*

These findings of fact are based upon the trial record and must be given

deference in this court as explained above.  Petitioner has the burden of proving by

clear and convincing evidence that the factual findings were wrong.  Further, in a

challenge to a guilty plea by post-conviction motion:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); *see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).

The "charging decision" referenced by the state court was not a formal charge, such as an information or an indictment.  It was a memorandum from the prosecutor to Petitioner's attorney dated February 19, 2003.  Doc. 1, Ex. 1, p. 31.  The memorandum constitutes an offer of a charge and sentence for a guilty plea.  It tersely states:  "Plead to Attempted Lewd and Lascivious in the Presence of a Child.  31.05 months DOC with the balance on probation and the other terms are left to the court."  *Id.*  Attached to the offer is a sentencing score sheet.  *Id.*, Ex. 2, pp. 32-33.  It represents that the charge is a third degree felony, not a second degree felony.  *Id.*, p. 32.  It represents that the maximum sentence is 5 years, not 15 years, and the lowest possible prison sentence is 31.05 months.  *Id.*, p. 33.

Petitioner entered a plea, however, to a second degree felony, avoiding a prison sentence altogether.  Petitioner has not presented clear and convincing evidence that the State ever offered a plea to a second degree misdemeanor.  The "charging decision" plea offer did not offer a plea to a second degree misdemeanor.  Indeed, as will be explained ahead, Petitioner's attorney represented at the second sentencing, after revocation of community control, that Petitioner knew that he had entered a guilty plea to a second degree felony, but he argued that his plea was a mistake because he had been charged in the information with a third degree felony.  The trial court's error, finding that the State had misrepresented the degree of the charge at the plea colloquy

when it was Petitioner's attorney that made the mistake, is of no consequence.  The error was exactly as found by the trial court, a slip of the tongue at the beginning of the plea colloquy.  Had Petitioner actually thought that he was about to plead to a second degree *misdemeanor*, Petitioner had every reason to have spoken up when the court told him he was pleading to a second degree felony with a maximum prison sentence of 15 years.  Petitioner was given plenty of opportunity to set the record straight, but he did not.  He said he understood he was pleading to a second degree felony.  Petitioner was not a novice with respect to such a criminal charge.  He had a prior conviction for the same sort of offense just five years earlier.

Ground Two, therefore, based upon the theory that a plea to a second degree misdemeanor had been offered, is without merit.  The trial court's factual determination that Petitioner knew exactly what was occurring is presumed correct, and Petitioner has not been shown by clear and convincing evidence that this factual finding was wrong.  28 U.S.C. § 2254(e)(1).  Thus, there could not have been attorney error or prejudice to the outcome.  The trial court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Three**

Petitioner alleges that the information was so defective that he was misled and confused.  Doc. 1, p. 15.  He contends that he could not tell whether he was pleading to a felony attempt or a misdemeanor assault.  *Id.*  Petitioner asserts that the prosecutor used the former statute, FLA. STAT. § 800.04 (1997), and the information was defective

because it did not specify a subsection.  *Id.*, p. 16.  Petitioner argues that the

information was also defective because it did not allege an overt act or intent as

necessary to charge an attempted offense.  *Id.*  Petitioner asserts that his lawyer told

him that he would be entering a plea to an offense less than the third degree felony

described in the "charging document."  *Id.*  He thought that the offense would be a

second degree misdemeanor, an "assault."[5]  *Id.*  Petitioner represents that at the

violation of probation hearing, the court erroneously revoked his community control and

probation and sentenced him as if he had been convicted of violating FLA. STAT. §

800.04(5)(b) (1999).  *Id.*, p. 17.  He states that the prosecutor thought that a five year

sentence was the maximum sentence, thinking that the underlying offense was a third

degree felony.  *Id.*  Petitioner asserts that this claim was raised in his first Rule 3.850

motion.  *Id.*, p. 15.

 Since elsewhere Petitioner asserts that he did not see the information before

pleading no contest, this claim cannot be read as a claim that the plea was involuntary

because the information was confusing to Petitioner.  If this claim were to be read in this

manner, it should be summarily denied.  Petitioner could not have been confused by an

information that he contends he never saw before entering his plea.  After all, he makes

this assertion that he did not see the information until after he entered his plea under

penalty of perjury.  Doc. 23, pp. 7-8, 47.

 Instead, however, this claim must be read as a claim that Petitioner could not

plead to an information defectively charging a second degree felony.  The claim arises

---

 [5] This contention is Ground Two and is without merit as discussed above.

from the difference between the 1997 version of this statute and the 1999 version.  In 1997, FLA. STAT. § 800.04 had four subsections.  All four subsections created an offense generally called "lewd, lascivious, or indecent assault or act upon or in the presence of child," but without committing the crime of sexual battery.  Relevant to the factual allegations here, subsection (1) created an offense of handling, fondling, or assaulting a child under 16 years of age in a lewd, lascivious, or indecent manner, and subsection (4) created an offense of knowingly committing a lewd or lascivious act in the presence of any child under the age of 16 years.  Violation of any of the four subsections was a second degree felony.  An attempt to commit the crime, pursuant to FLA. STAT. § 777.04, was a third degree felony.

In 1999, the statute was amended by Ch. 99-201, § 6, Laws of Florida (1999). The statute created several offenses known as "lewd or lascivious offenses committed upon or in the presence of persons less than 16 years of age."  The statute created a new offense of "lewd or lascivious molestation."  FLA. STAT. § 800.04(5) (1999).  The word "assault" was not used to establish this new offense.  "Lewd or lascivious molestation" was a second degree felony and included intentional touching of the genital area of a person less than 16 years of age; the offense became a first degree felony if the offender was 18 years of age or older and the victim was less than 12 years of age.  FLA. STAT. §§ 800.04(5)(a) and (b).  By force of FLA. STAT. § 777.04, an attempt to commit this offense was a second degree felony.

As noted earlier, the information in this case charged that Petitioner "did unlawfully *attempt* to handle, fondle or make an *assault* upon a child under the age of sixteen (16) years, to-wit:  [child's name omitted here], *age 11* years, in a lewd,

lascivious, or indecent manner, *by attempting to touch the child on her vagina.*"  Doc. 23, Ex. K; doc. 23-2, p. 3.  This plainly alleged a second degree felony under the 1999 version of the statute, that is, FLA. STAT. §§ 800.04(5)(a) and (b) (1999) and FLA. STAT. § 777.04 (1999).  Indeed, since the offense occurred on October 21, 2001, at the earliest, the information could not have been based upon the 1997 version of the statute.  The word "assault" in the information seems to have been an erroneous reliance by the prosecutor upon the 1997 statute, probably as a result of using an older form for the information, but the word was surplusage.  It is noted, however, that the following allegations were missing from the information:  (1) an allegation that Petitioner was 18 years of age or older;[6] (2) a reference to subsections (5)(a) and (b) of FLA. STAT. § 800.04; and (3) a more specific factual allegation of an "act toward the commission of such offense" as described in FLA. STAT. § 777.04(a), the statute that defines a criminal attempt.

With respect to the issue of exhaustion of state court remedies, ground four of the first Rule 3.850 is entitled "unlawful judgement and sentence."  Doc. 13, Ex. D; doc. 13-4, p. 14.  Petitioner argued in ground four that he had been charged under one statute and convicted under another.  *Id.*  He asserted that subsection (5) of the statute had been added to § 800.04, but the information tracked the statute before subsection (5) was added.  He contended that, nonetheless, the order revoking community control determined that he had been convicted of FLA. STAT. § 800.04(5)(b), which is the 1999 version of the statute.  *Id.*, pp. 14-15.  He asserted that the information did not allege the

---

[6] Petitioner has not argued this possible defect in his petition.

essential elements of the offense described by § 800.04(5)(b).  *Id.*, p. 16.  Petitioner

concluded:

> A defendant can not be charged by one statute and sentenced by another
> statute, nor can the defendant confer on the Court, via a plea agreement,
> authority to impose a sentence for [an] offense greater than the allegations
> charge [sic] and by a different statute.  Therefore the movant has a right to
> withdraw his plea.

*Id.*, pp. 16-17.  The same allegations appeared in support of ground five in this first Rule

3.850 motion, which faulted the lack of a factual basis for the plea.[7]  *Id.*, pp. 17-19.

Some of these issues surfaced when Petitioner was sentenced for violation of

community control.  At the beginning of the sentencing hearing on April 23, 2003,

counsel for Petitioner said that *the day before*, Petitioner had came up with an argument

that he had entered a guilty plea to a third degree felony, not to a second degree

felony.[8]  Doc. 22, Ex. N (transcript); doc. 22-3, p. 26.  Counsel for Petitioner said:

> Today at the sentencing I have got some issues I want to put on the
> record.  Now the Plea Waiver Form that Mr. Nichols pled to indicates that
> he pled to an attempted lewd and lascivious on a child.  On the Plea
> Waiver we indicated a second-degree felony.  Then on the scoresheet
> they, when they scored, they scored an L&L molestation.  And if you do it
> as the scoresheet indicated as an L&L molestation, it would be, if it was
> not an attempt, it would be a first-degree felony.  The attempt would make
> it a second-degree felony and I think that's what the State's arguing he
> pled to.
>
> What Mr. Nichols pointed out to me yesterday is that the Information didn't
> charge him with an L&L molestation, it charged him with an attempted L&L
> on a child.  When you look at the statute, it's his belief that that would fall
> up under subparagraph 6 [of the 1999 statute] which is lewd and
> lascivious conduct and that conduct is punishable by a second-degree

---

[7] This is Ground One in the § 2254 petition before this court.

[8] This is telling, as it indicates that Petitioner was revising his claims as he went.
He certainly did not make this argument at the plea colloquy.

> felony, therefore an attempt of that particular conduct would make this a
> third-degree felony, therefore the maximum punishment that you could
> sentence him to is a five year felony.

*Id.*, pp. 26-27.  Counsel for Petitioner said that this "was sprung on me late yesterday

afternoon."  *Id.*, p. 27.

The prosecutor (Mark Graham) argued that the information charged all of FLA.

STAT. § 800.04 and charged "child molestation."  *Id.*  Petitioner then said:  "I signed the

plea thinking it was just as I told Mr. Waylon Graham that it's a third degree."  *Id.*, p. 29.

The court rejected this, noting that: "If your understanding was this was a third-degree

felony, it would be hard to imagine how you were going to be subject to nine years of

supervision . . . ."[9]  *Id.*, pp. 29-30.  Petitioner admitted that he had a bachelor's degree in

engineering.  *Id.*, p. 30.

Neither ground four nor five in the first Rule 3.850 motion presented a federal

constitutional claim to the state court.

> The sufficiency of a state indictment or information is not properly the
> subject of federal habeas corpus relief unless the indictment or information
> is so deficient that the convicting court is deprived of jurisdiction.  *Branch
> v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980);  *Meyer v. Estelle*, 621 F.2d
> 769, 771 (5th Cir. 1980).

DeBenedictis v. Wainwright, 674 F.2d 841, 842-843 (11th Cir. 1982).  A charging

document is adequate to confer jurisdiction if it alleges the elements of the offense,

names the complaining witness, and sufficiently describes the circumstances of the

alleged offense.  Heath v. Jones, 863 F.2d 815, 821 (11th Cir. 1989).

---

[9] The maximum prison sentence for a felony of the third degree is 5 years.  FLA.
STAT. §775.082(3)(d).  Consequently, the maximum term of probation for a third degree
felony is also 5 years.  Phillips v. State, 651 So.2d 203, 205 (Fla.5th DCA 1995).

Petitioner did not allege that the information was so deficient that it deprived the state court of jurisdiction, an essential element of a federal due process claim, and Petitioner did not cite any state cases for that proposition.  The burden of making such a claim was squarely upon Petitioner because a plea waives defects in the charging document.  <u>Lacey v. State</u>, 831 So. 2d 1267, 1271 (Fla. 4th DCA 2002).

Since Petitioner did not present a federal claim in his first Rule 3.850 motion, he did not exhaust state court remedies as to this claim.  Petitioner must show cause and prejudice for this default before this court can reach the merits.  He has not done so.  Consequently, this court cannot reach the merits of Ground Three.

**Ground Four**

Petitioner asserts that his attorney was ineffective because he failed to tell him about a favorable plea offer.  He contends that the plea offer in the February 19, 2003, "charging decision" was never conveyed to him by his lawyer.  Doc. 1, p. 18.  Petitioner argues that had he known of this plea offer to a third degree felony, he would have accepted it even though it required a 31.05 month prison sentence.  To avoid this troubling aspect of the argument, Petitioner claims that had the scoresheet been corrected, he would have been sentenced to community control instead of the 31.05 months in prison contained in the February plea offer.  Doc. 23, p. 3.  That, of course, would have depended entirely upon whether the State would have agreed to the score sheet changes since community control with no prison time was not part of that offer.

Respondent argues that Petitioner did not fairly present this claim in either of his Rule 3.850 motions.  Oddly, in ground three in the first Rule 3.850 motion, Petitioner alleged that his attorney *did* convey the gist of this plea agreement, at least with respect

to a plea to a third degree felony.  He says he was told by his lawyer that the State had

offered to let him plead guilty to a third degree felony attempt, and that he would be

placed on community control that could be terminated in five years.  Doc. 13, Ex. G;

doc.13-6, p. 15.  The only fault alleged in this ground three in the first Rule 3.850 motion

is that when he got to the plea hearing, he faced a second degree felony that exposed

him to a sentence of 15 years if he violated supervision, rather than 5 years had it been

a third degree felony.  *Id.*, pp. 15-16.  This is not a claim that counsel failed to convey

the February 19, 2003, plea offer.  It is only a claim that the sentencing part of the offer

was incorrectly conveyed because counsel promised a sentence of community control

with a possible prison sentence of 5 years for a violation, inconsistent with the claim

before this court, that the offer was for a prison sentence of 31.05 months.

        In ground one of the first Rule 3.850 motion, however, Petitioner did raise a

similar claim.  He asserted he had not seen the February 19, 2003, plea documents

earlier, and that he could not have entered a knowing plea to a second degree felony

when he was unaware that the State had offered a plea to a third degree felony.  *Id.*, pp.

10-11.  Implicit is the contention that counsel was at fault in failing to convey the plea

offer to Defendant (despite the contradictory allegation in ground three of the first Rule

3.850 motion).  Thus, the essence of the ineffectiveness claim now presented to this

court as Ground Four was arguably presented to the state court.  Indeed, the state court

addressed the claim as such by finding no error or prejudice under Strickland.  Doc. 13,

Ex. H; doc. 13-6, p. 28.  Respondent's argument that state court remedies were not

exhausted as to Ground Four is rejected.

As noted above, the February 19, 2003, plea offer stated:  "Plead to *Attempted* Lewd and Lascivious *in the Presence of a Child*.  31.05 months DOC with the balance on probation and the other terms are left to the court."  Doc. 1, Ex. 1, p. 31 (emphasis added).  The score sheet attached to this document said the offense was a third degree felony.  *Id.*, pp. 32-33.  It was not a plea offer to a misdemeanor.

This plea offer was based upon the 1997 statute, which named the offense: "Lewd, lascivious, or indecent assault or act upon or in presence of child."  The 1999 version of the statute did not use the phrase "in the presence of a child."

There is nothing in the February 19, 2003, document that indicates the State was offering a plea to the lesser offense in the 1999 version of the statute, which created the offense of intentionally touching a child under the age of 16 in a "lewd and lascivious conduct."  FLA. STAT. § 800.04(6) (1999).[10]  There is nothing to indicate a plea to an attempted touching offense, and, as just observed, the offer used the phrase "in the presence of a child" from the 1997 statute.

In summary, the February offer was an offer to plead to the 1997 version of the statute.  Even if the state prosecutor had not realized the error, that offer would not have been approved by the court because the 1997 statute had been superseded and did not apply to an offense committed (at the earliest) on October 21, 2001.  Thus, even if Petitioner's attorney did not convey the offer to him, prejudice to the outcome has not been shown.  Consequently, the trial court's adjudication of the merits of this federal

---

[10] That required proof that Petitioner, over the age of 18, intentionally touched a person under 16 years of age "in a lewd and lascivious manner."  FLA. STAT. §§ 800.04(6)(a)1 and (b) (1999).  The offense was a second degree felony, so an attempt to commit that offense would be a third degree felony.

claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Five**

Petitioner asserts that his plea was not knowing and voluntary because he was not aware that he was entering a plea to "a greater offense than the state had intended to charge him [with] and proposed he enter a plea, when the plea was entered." Doc. 1, p. 22. He contends that the State intended to charge him with a third degree felony (under the 1997 statue)[11] but he was mistakenly led to plead to a second degree felony (under the 1999 statute). *Id.* This claim directly contradicts Ground Two, the claim that the State intended to allow Petitioner to enter a plea to a second degree misdemeanor.

Respondent contends that Petitioner did not exhaust state court remedies as to the federal claim he now wishes to present. Doc. 22, p. 27. However, it is easier to adjudicate this claim on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

The premise of this claim is contained in Grounds Two, Three, and Four. The premise, that the State intended to charge Petitioner under the 1997 statute, affords no relief for the reasons discussed above. The State may have started out using the 1997 statute, but it surely would not have ended up there since the 1999 statute governed. Thus, the trial court's adjudication of this claim adjudication of the merits of this federal

---

[11] Petitioner describes the third degree felony as "attempted lewd and lascivious in the presence of a child." Doc. 1, p. 22. This is the 1997 statute as discussed above.

claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Six**

Petitioner asserts that his attorney was ineffective because he misadvised him about the consequences of the plea.  Doc. 1, p. 24.  He contends that his attorney advised him that he would not be designated as a sexual predator if he entered the plea.  *Id.*  He alleges that when the court "decided to change that condition," his attorney said that "there was no difference between sexual offender and sexual predator."  *Id.*  Petitioner contends that had his attorney correctly advised him that there is a difference between the two, and that he would be designated a sexual predator, he would not have entered a plea but would have insisted upon going to trial.  *Id.*

Petitioner points out that it was the court that changed the designation from sexual offender to sexual predator on the plea agreement after the plea was entered.  *Id.*, pp. 24-25.  This is supported by the record.  At the end of the plea colloquy, after the court adjudicated Petitioner guilty, the court said: "The defendant shall be designated a sexual predator and I'm making that change to the plea form."  Doc. 22, Ex. M; doc. 22-3, p. 18.

Petitioner said he told his attorney during the plea colloquy that he wanted to withdraw his plea, after he learned he would be designated as a sexual predator.  Doc. 1, p. 25.  Petitioner states that this occurred during a pause in the transcript of the plea colloquy, just before Petitioner's attorney said "Judge, we're ready to proceed."  *Id.*,

citing doc. 22, Ex. M; doc. 22-3, p. 15.  Petitioner asserts that his attorney "told him that

it was too late to do that, because the plea had been entered."  Doc. 1, p. 25.

Respondent argues that this claim was presented as ground three in the first

Rule 3.850 motion, but not as a federal claim.  Doc. 22, p. 30, citing doc. 13, Ex. D, p. 3;

doc. 13-4, p. 13.  This defense is without merit.  Ground three in the first Rule 3.850

motion alleges the same claim of ineffective assistance of counsel.  *Id.*  Petitioner

specifically alleged in ground three that:

> Mr. Graham told the movant that he would not be designated as [a] sexual
> predator, however the court changed that condition of the plea agreement
> after Mr. Graham entered it and designated the movant as [a] sexual
> predator.

Doc. 13, Ex. D; doc. 13-4, p. 13.  In other words, the erroneous advice is alleged to

have occurred before the plea was accepted by the court.  This is the same claim made

before this court, at least with respect to whether Petitioner would be designated as a

sexual predator.

The state court rejected this claim.  The court found that the sexual predator

designation was on the plea agreement and "Defendant stated he understood that he

would receive that designation."  Doc. 13, Ex. E, p. 1; doc. 13-5, p. 2.

These findings are supported by the record, although the change to the plea

agreement was not made until after the plea had been accepted.  At the outset of the

plea colloquy, as noted earlier, Petitioner's attorney first represented that Petitioner

would be designated a sexual *offender*.  Doc. 22, Ex. M; doc. 22-3, p. 12.  The court

and the parties then discussed the fact that Petitioner had a prior conviction on March 4,

1996, for "lewd and lascivious" pursuant to the same statute, FLA. STAT. § 800.04.  *Id.*,

p. 14.  Since this conviction was within the prior ten years, counsel for Petitioner agreed

that Petitioner had to be designated a "sexual *predator*."  *Id.*, pp. 14-15.  After Petitioner

was placed under oath, the following took place between the state court and Petitioner:

> Q.  Has your attorney reviewed with you the, all the conditions
> that will be imposed upon you as a sexual predator, because
> you will be designated as such as a result of this offense?
>
> A.  Yes, sir.
>
> Q.  Do you have any questions that you want to ask the court or
> your attorney about that designation?
>
> A.  No, sir, not at this time.

Doc. 22, Ex. M, p. 7; doc. 22-3, p. 17.

In the face of these representations made under oath to the state court,

Petitioner cannot now assert that he did not know that he would be designated a sexual

predator or that he did not understand the conditions that would be imposed upon him

due to that designation.  The assertion that Petitioner did not ask any questions

because his attorney told him he could not withdraw his plea does not make sense and

is contradicted by the record.  The pause in the record, identified by Petitioner as the

place where he told his lawyer that he wanted to withdraw his plea because he did not

understand that he would be designated as a sexual predator, came before Petitioner

was placed under oath and *before* the court had accepted the plea.  There was no plea

to withdraw at that point.  Petitioner has shown, by the way that he has prosecuted this

habeas petition, that he understands complex arguments.  Petitioner has a degree in

engineering.  It would have been a very simple thing for Petitioner to have said to the

court that he did not understand the conditions that would be placed upon him as a

sexual predator, that his attorney had told him he would be designated only as a sexual offender, and that he did not want to go forward with a nolo contendere plea.  The court gave Petitioner the opportunity to explain these things if they were true.  Moreover, the court gave Petitioner a chance to ask his attorney questions about this before proceeding.

"[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Petitioner has not done so here.  Thus, the trial court's adjudication of this claim adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Seven**

Petitioner states that at the plea hearing, he told his lawyer that he wanted to withdraw his plea and proceed to trial.  Doc. 1, p. 26.  He states that his lawyer told him it was too late to do that and failed to inform the court that Petitioner had changed his mind.  *Id.*  Petitioner cites the same pause in the transcript and asserts that this is when he told his lawyer he wanted to withdraw his plea.  *Id.*, p. 27.  As discussed above, this "pause" occurred during the plea colloquy just before Petitioner was placed under oath.  Doc. 22, Ex. M; doc. 22-3, p. 15.  Petitioner asserts that his trial counsel misadvised him about his right to withdraw his plea before sentencing, and failed to inform the court that Petitioner wanted to withdraw his plea due to counsel's misadvice.  *Id.*, p. 26.  Petitioner argues that it would have been less difficult to withdraw his plea then.  He contends that

his attorney had "an apparent conflict of interest" with respect to this misadvice. *Id.*
The gist of the conflict of interest claim is that his attorney had not rendered competent advice previously, and had a motive to refuse to tell the court that Petitioner wished to withdraw his plea.

Respondent points to ground six in Petitioner's first Rule 3.850 motion, and argues that Petitioner did not allege the same facts as presented to this court.  Doc. 22, p. 34.  In ground six of the first Rule 3.850 motion, Petitioner alleged that he told his lawyer that "he wanted to withdraw his plea and proceed to trial."  Doc. 13, Ex. D; doc. 13-4, p. 21.  Petitioner did not allege in ground six when this occurred, though, as discussed above, he did so allege with respect to ground three.  But in ground six he claimed that his attorney was ineffective because he did not file a motion to try to withdraw the plea.  *Id.*  This factual allegation came after Petitioner had quoted several things said by his attorney at sentencing for revocation of community control, which was about six weeks after the plea.  *Id.*, p. 20.[12]  This is the only indication as to when it might have been that Petitioner allegedly told his lawyer that he wanted to withdraw his plea, and implies that Petitioner did this some time after the plea.

Nonetheless, when grounds six and three in the first Rule 3.850 motion are read together, it is apparent that the alleged attempt to "withdraw the plea" occurred before

---

[12] Although Petitioner did not cite the record when he quoted his attorney in his first Rule 3.850 motion, doc. 13-4, p. 20, one of the passages come from the transcript of sentencing after revocation of community control, on April 23, 2003.  Doc. 22, Ex. N; doc. 22-3, p. 28.  Petitioner said that the first of the two quotations occurred before the sentencing hearing with witnesses present (i.e., not on the record).  This must have been the same sentencing hearing.  Doc. 13-4, p. 20.  Indeed, Petitioner clarifies that this first statement, off the record, was made by counsel just before the April 23, 2003, sentencing hearing.  Doc. 1, p. 27.

the plea had been entered.  It will be assumed, therefore, that the claim now before this court was fairly presented to the state court.

This claim affords no relief in this court for the reasons discussed above with respect to Ground Six.  The withdrawal of the plea claim is actually a claim that counsel was ineffective for allowing Petitioner to enter his plea after Petitioner told counsel, at the beginning of the plea hearing, that he did not want to proceed.  As to this claim, Petitioner had ample opportunity to set the record straight during the plea colloquy.  The trial court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Eight**

Petitioner alleges that at the plea colloquy on March 7, 2003, his attorney told him that if he did not enter a plea, the judge was going to revoke his bond.  Doc. 1, p. 28.  He asserts that this was not true, as he had been successfully on pretrial release for over a year.  *Id.*  Petitioner claims that "if his attorney had not told him that, he would not have accepted the plea and insisted on proceeding to trial, as he had done for over a year."  *Id.*  He explains that when he was asked by the court whether anyone had threatened him to enter the plea, he said no because he thought it was not a threat, but just his lawyer's advice.  *Id.*  He argues that it turned out to be misadvice.  *Id.*

Respondent argues that this claim was not fairly presented to the state court. Doc. 22, p. 36.  That is incorrect.  It was squarely presented.  In ground two of the first Rule 3.850 motion, Petitioner claimed that on the day before the plea hearing, his lawyer told him that the prosecutor was concerned that he would not show up for trial

and "his bond would be revoked."  Doc. 13, Ex. D; doc. 13-4, p. 12.  He alleged that this

gave him the option of entering the plea and receiving a sentence of community control

and probation, "or going to jail until trial."  *Id.*  Petitioner ended the claim by asserting:

"After entering the plea, the movant found out that there was no reason for the bond to

be revoked, because Ms. O'Connor [the prosecutor] concerns [sic] were not grounds."

*Id.*  Consequently, the claim in ground two of the first Rule 3.850 motion and Ground

Eight before this court are the same claim.  State court remedies were exhausted as to

this claim.

Since there has been no evidentiary hearing, it will be assumed as true that

Petitioner's lawyer told him that the prosecutor had concerns about whether he would

show up for trial if he did not enter a plea, and would move to revoke his bond.  It will

also be assumed that Petitioner's lawyer told Petitioner that the state court would have

granted the motion and revoked his bond.

To show ineffective assistance of counsel, Petitioner must show significant

attorney error.

> To establish that counsel's performance was deficient, a petitioner must
> meet a high burden.  "There is a strong presumption that counsel's
> performance was reasonable and adequate."  *Michael [v. Crosby*, 430
> F.3d 1310 (11th Cir. 2005], 430 F.3d at 1320.  To overcome that
> presumption, "a petitioner must establish that no competent counsel would
> have taken the action that his counsel did take."  *Chandler v. United
> States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).  Because this
> standard is objective, *id.* at 1315 n. 15, it matters not whether the
> challenged actions of counsel were the product of a deliberate strategy or
> mere oversight.  *The relevant question is not what actually motivated
> counsel, but what reasonably could have motivated counsel.  See Roe v.
> Flores-Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 1037, 145 L.Ed.2d 985
> (2000) ("The relevant question is not whether counsel's choices were
> strategic, but whether they were reasonable."); *Darden v. Wainwright*, 477
> U.S. 168, 186, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (rejecting a

claim of ineffective assistance because "there are several reasons why counsel reasonably could have chosen to rely on a simple plea for mercy from petitioner himself").  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

*When we can conceive of a reasonable motivation for counsel's actions, we will deny a claim of ineffective assistance without an evidentiary hearing. . . .*

Gordon v. United States, __ F.3d __, 2008 WL 614189, *9 (11th Cir. Mar. 7, 2008) (No. 05-16703) (emphasis added).

Defense attorneys often must try to predict the outcome of a bond hearing, and the law governing pretrial release is not especially clear.  Had Petitioner refused to enter a plea and insisted upon going to trial, it is not unlikely that the prosecutor would have conducted a reassessment as to the likelihood that Petitioner would appear for trial. While the prosecutor at the time did not have benefit of future events in making that decision, it has not gone unnoticed that just a few weeks after having been placed on community control, Petitioner violated community control by lying to his probation officer about the fact that he had altered his social security number.  Doc. 13, Ex. B; doc. 13-3, p. 12.  It is quite conceivable that Petitioner's counsel had a reasonable motivation to advise him that the prosecutor would try to revoke his bond if the plea did not go through, and that the court might grant the motion.

Moreover, Petitioner has come forward with no compelling evidence to show that his attorney's advice as to his bond was erroneous.  Consequently, the trial court's adjudication of the merits of this federal claim has not "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground One**

Ground One now may be addressed.  Petitioner contends that he was denied due process because the trial court "failed to establish a factual basis before accepting the plea and no FACTS existed to support a plea to a [second degree felony] attempted offense."  Doc. 1; p. 8 on the electronic docket.  Petitioner claims that he was innocent of this charge, and that there was a witness, Tamberly Nichols, who would have proved his innocence.  Doc. 1, pp. 10-11.  Petitioner asserts that the information was not read or shown to him before he entered his no contest plea, and he states that "he was not told that the State was going to accuse him of attempting to touch the child on the vagina."  Doc. 23, pp. 7-8.  He states that the information was not filed until after he had entered his plea.  *Id.*, p. 15.  Petitioner alleges that since eye witness testimony would have shown that he did not try to touch the child on the vagina, he would not have agreed to enter any plea had the information been shown to him or read to him.  *Id.*, p. 8.  Petitioner notes that the trial judge asked his lawyer to stipulate to the existence of sufficient facts to prove the charge, but did not inform him of what those facts were or place those facts upon the record.  *Id.*

Respondent argues that this claim is not exhausted and that the factual basis for the claim was not fairly presented to the state court.  Doc. 22, p. 10.  Respondent's exhaustion argument should be rejected.  In ground five in Petitioner's first Rule 3.850 motion, Petitioner complained that the plea had "no factual basis."  Doc. 13, Ex. D; doc. 13-4, p. 17.  He alleged that he was convicted "for a crime that he did not commit . . . ."

*Id*.  He alleged that there was a witness, Tamberly Nichols, who would have testified that Petitioner had done nothing wrong, that he simply woke the victim up from sleep on a sofa and told her to go to bed with her mother.  *Id*., p. 19.  He asserted that he "did not touch, attempt to touch or intend to touch the alleged victim in an indecent manner."  *Id*. While Petitioner did not mention federal due process by name, he presented the same factual allegations to support such a claim as he now presents to this court.  The court should reach the merits of this claim.

Respondent next argues that Petitioner has alleged only a state procedural claim in this court, not a federal claim.  Doc. 22, p. 12.  The trial court did not hold an evidentiary hearing, and based its ruling entirely on the record now before this court. The court held that "Defendant has failed to demonstrate any prejudice suffered as a result of [a] factual basis not being set forth on the record."  Doc. 13, Ex. E; doc. 13-5, p. 2.

"[T]he due process clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence."  Wallace v. Turner, 695 F.2d 545, 548 (11th Cir.), *rehearing denied*, 706 F.2d 318 (11th Cir. 1983).  A guilty plea "unaccompanied by protestations of innocence" does "not present the issue of voluntariness, the fundamental constitutional consideration when evaluating the validity of a plea . . . ."  *Id*.  The Wallace court also noted that

> [s]tates are free to adopt procedural rules requiring a factual basis as Florida has done in Rule 3.172(a).  The federal Constitution, however, does not mandate them to do so, and a violation of such state procedural rules does not of itself raise constitutional questions reviewable by federal habeas courts.

*Id.* (citations omitted).  "A factual basis is necessary for accepting of a guilty plea by a trial court when a defendant proclaims his innocence and yet pleads guilty."  Stano v. Dugger, 921 F.2d 1125, 1140 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991), citing North Carolina v. Alford, 400 U.S. 25, 38 & n. 10, 91 S.Ct. 160, 167-68 & n. 10, 27 L.Ed.2d 162 (1970) and Wallace.  "The failure to provide a factual basis for a guilty plea presents a constitutional claim relating to the knowing and voluntary aspect of the plea only when the defendant proclaims his innocence while pleading guilty."  Rogers v. Maggio, 714 F.2d 35, 38 n. 5 (5th Cir. 1983), citing Wallace.

Collecting the various allegations in this § 2254 petition, it is Petitioner's contention that he was never informed of the factual allegations in the information and the court did not require a factual basis for the plea.  Petitioner argues that because he did not know that he was charged with attempting to touch the victim's genitals, he had good cause for not protesting his innocence during the plea colloquy.

Consideration of this claim requires another review of the record.  The first item to consider is the "charging decision."  Petitioner alleges that his lawyer never showed this document to him, and without an evidentiary hearing or a finding of fact by the state court (which does not exist here), this must be assumed to be true.  Even if Petitioner's lawyer had conveyed this document to him, however, it would not have informed Petitioner as to the factual allegations of the offense with which he was eventually charged by information.

The plea agreement stated that Petitioner would plead no contest to "attempted lewd and lascivious on a child."  Doc. 22, Ex. L; doc. 22-3, p. 5.  There was no other description of the offense, and the factual allegations were not explained.  *Id.*

The information provided clear factual allegations.  The information stated that it charged a second degree felony.  Petitioner asserts that he did not see or read this document before entering his plea, and did not know he was accused of attempting to touch the child on her vagina.  Doc. 1, p. 13; doc. 23, pp. 7-8, 15.  There is nothing in the plea colloquy transcript to contradict this assertion. The information was signed on March 6, 2003, but the date stamp on it seems to show that it was filed on March 7, 2003, the date of the plea colloquy.   It is possible that the information was filed on day of the plea but never shown to Petitioner, and that assumption will be made here.  It is also clear from the transcript of the plea colloquy that the trial court did not read the information to Petitioner, explain the elements of the offense and the factual allegations to the Petitioner, or require the State to set forth the evidence it planned to present at trial to prove the offense charged.

Even though the state court did not do these things, the federal due process claim does not exist without a contemporaneous claim of innocence.  Though he was entering a nolo contendere plea, Petitioner was entering a plea with criminal consequences.  Petitioner could have made a claim of innocence during the plea colloquy.  The plea agreement plainly told Petitioner that he was entering a plea to a sex offense against a child, a second degree felony for which Petitioner could be sentenced to 15 years in prison.  Petitioner signed the plea agreement and he had it to read the night before the plea.  The court also told Petitioner that he was charged with a

second degree felony for an "attempted lewd and lascivious act on a child," and that he

faced a possible sentence of 15 years in prison.  Petitioner said that he understood.

Petitioner had a prior conviction for a lewd and lascivious act upon a child, and he knew

exactly what this kind of criminal charge might entail.  He has a college degree in

engineering, so he is able to read and presumably has a greater understanding than

others with less education.  If it was true that Petitioner had simply tried to wake the

child and startled her, Petitioner would have known that this would not be a criminal

offense of any kind against that child.  It would certainly not have been an "attempted

lewd and lascivious act" against the child.  If Petitioner's version of events were true, he

had to know that he was innocent during the plea colloquy despite the court's failure to

place the specific a factual predicate on the record.  Yet he did not protest or make any

claim of innocence.

    Moreover, Petitioner's claims in his Rule 3.850 motions and before this court

contradict any assertion of complete innocence.  He has claimed that he would have

entered a plea to a second degree misdemeanor and to a third degree felony.  He has

asserted that the reason he wanted to stop the proceedings and not plead nolo

contendere was because his lawyer gave him incorrect advice as to his bond status and

designation as a sexual predator rather than as a sexual offender.  These claims are not

premised upon a belief that he was innocent.

    Therefore, Ground One fails to demonstrate a federal due process claim.  The

trial court's adjudication of the merits of this federal claim has not "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Conclusion**

Accordingly, it is **RECOMMENDED** that this § 2254 petition for writ of habeas corpus filed by Jerry Lee Nichols challenging his conviction for an attempted lewd and lascivious act upon a child in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida, case number 02-402H, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on April 7, 2008.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**